RICKER et al. v. SANITARY DIST. OF CHICAGO.[1]

(Circuit Court, N. D. Illinois, N. D. January 10, 1898.)

CANCELLATION OF CONTRACT—FALSE REPRESENTATIONS.

Where a contract for digging a canal is made upon representations by the canal trustees as to the character of the materials to be excavated, the facts that the materials were other than as represented, and much more expensive to excavate, and that the trustees might have ascertained that fact, are sufficient to warrant a cancellation of the contract at the suit of the contractors.

Suit by Nathaniel H. Ricker, Francis L. Lee, and Joseph A. Owens, co-partners and contractors as Ricker, Lee & Co., against the Sanitary District of Chicago, to cancel a certain contract and bond. The contract was for the construction by Ricker, Lee & Co. of a part of the drainage channel in course of construction by the sanitary district, and the bond was given by said firm conditioned for the due execution of the contract. The contract provided that Ricker, Lee & Co. should be paid 23¾ cents for each cubic yard of "glacial drift" excavated, and 80 cents for each cubic yard of "solid rock" excavated. After beginning work, the contractors found that much of the material to be excavated was a conglomerate rock of a very intractable nature, formed of bowlders and clay cemented together. Said conglomerate was even more expensive to excavate than solid rock, but the sanitary district wished to classify it as glacial drift. The contractors, before making a bid for said work, were furnished by the sanitary district with certain data or samples of the materials to be excavated, which samples consisted of loam, sand, blue and yellow clay, gravel, bowlders, and bedrock, and did not include any of said conglomerate. It was alleged by the contractors that the sanitary district, at the time when it furnished said samples of material to the contractors for the purpose of having them bid for said work, knew that large quantities of said conglomerate would have to be excavated by the contractors, that said conglomerate was much more difficult to excavate than any of the materials in the samples furnished, and that the contractors had then no knowledge of these facts. The evidence showed that borings on the line of said drainage channel had been made by Engineer Lyman E. Cooley, which tended to show that conglomerate material was to be found there, and that another contractor—Charles Fitzsimons—had stated to a committee of the board of trustees of the sanitary district that he would not bid on said contract, because he feared he would encounter this conglomerate. The master, among other things, found as follows:

"That some of the trustees of defendant, who were such at the time of the making of proposals for bids, as aforesaid, and at the time of the making of the contract between the complainants and defendant, as aforesaid, were familiar, in a general way, with the fact that certain borings had been made by Chief Engineer Cooley, and had, in a general way, known by his reports and statements to the engineering committee the results of such borings: that some of said trustees also had been present and heard the statements made by Gen. Fitzsimons touching the material

---

[1] Reported by Louis Boisot, Jr., Esq., of the Chicago bar.

likely to be encountered between Summit and Sag; that the certified copy of the government borings was also on file in the office of defendant; that any one of the trustees, had his attention been called thereto, might, if he so desired, have ascertained the results of the Cooley borings and of the government borings, on file in the office of defendant, and might have been advised of the fact that information was contained therein other than that shown in the profile on file in the office of defendant, and differing considerably therefrom, before said proposal for bids was made, and said profile examined by complainants; that it does not, however, appear from the evidence that said trustees, or any of them, at the time when this contract was made, had any actual knowledge of the existence of said intractable material; that it should be remembered that the persons elected as trustees of defendant were, at the time of their election, engaged in various occupations; that most of them were wholly unfamiliar with engineering, and had had no previous experience in the prosecution of an enterprise like that undertaken by defendant; that it could scarcely be expected that all the details of an undertaking of such great magnitude, involving an immense expenditure of money, and an almost infinite amount of detail, should be fully investigated or clearly understood by each member of the board; that the evidence affords no ground for believing, nor is it charged by complainants, that said trustees, or any of them, knowingly and deliberately intended, by means of said profile, to deceive bidders as to the character of the material to be excavated upon the sections shown in said profile, nor that they, or either of them, knowingly and intentionally caused said profile to be made in such a manner that it failed to show fairly whatever knowledge or information touching the character of said material so to be excavated was in the possession of the board or of its officers; that the evidence, however, does clearly show that all the information in the possession of the board through the Cooley borings and the government borings was not fully and fairly shown on said profile, nor on any other profile then contained in the office of defendant, nor were complainants or Engineer Weston advised by said trustees, or any of them, or by the chief engineer of defendant, or otherwise, that such borings had been made, nor were they advised nor did they know that Gen. Fitzsimons had appeared before the engineering committee of defendant, and had made the statements hereinbefore set forth."

Darrow, Thomas & Thompson, for complainants.
W. M. McEwen and F. W. C. Hayes, for defendant.

GROSSCUP, District Judge (orally).   The court is relieved, in this case, from entering critically into facts, because it is admitted by the counsel on both sides that they take no exceptions to the master's report, although some were, I believe, filed.   Therefore, I, in forming my decision, will be governed by the facts as found by the master, together with such additional data as have been called to my attention.

The first important fact is that the contract was large in the number of cubic yards to be excavated; large in the amount of money to be expended.   The contractors met with a substance not shown by the data purporting to exhibit the nature of the material to be excavated. . This substance the defendants maintain was not known by them to exist.   This substance was different from blue clay, and was so mixed with gravel that none of the ordinary methods for taking out blue clay, blue clay and sand, or even bedrock, were sufficiently adequate to remove it.   It is further conceded on both sides that this substance could not be excavated at anything like the ordinary cost of removing ordinary earth, including blue clay, blue clay and sand, yellow clay, or even bedrock, all of which materials are tractable, and can be readily plowed, picked, and handled by steam

shovel. Had this substance been known to exist, the board of trustees of the sanitary district could not have let the contract for anything like the terms on which it was let, and therefore, if the contractors are bound by the strict terms of the contract,—in the face of the existence of this wholly unknown substance,—they will unquestionably suffer a loss of from $50,000 to $85,000. Now, I think this is a very important fact, because it illustrates what should have been the conduct of the parties in subsequent dealings. Now, without presuming that the engineer, or any of the members of the board of trustees, knew of the existence of this substance, or even suspected it to exist, it was, nevertheless, within the power of the engineer to have ascertained this fact, with a reasonable degree of certainty, from the previous investigations made on that subject. Here was a great waterway to be put through, necessitating an expenditure of money and energy never excelled, if equaled, in the history of civilization. The engineer of such an undertaking was, in my judgment, called upon to employ every available means to procure such data as would give all the contractors an adequate and full knowledge of all the materials to be dealt with in the process of excavation, thus putting it in their power to intelligibly submit proposals and estimates for the work. Under the direction of Mr. Cooley, a series of borings were made, and from these investigations it was ascertained that the soil contained a substance which was termed "hard blue clay," and "hard blue clay with gravel." An accurate report, showing the result of these borings was made, and placed in the engineer's office among the files, and the engineer, in my judgment, ought to have known of their existence. It is also important to keep in mind that these reports were made, and recorded in the engineer's office, previous to the letting of the contract to the complainant. It is also important to know that the trustees instructed the engineering department to advise with experts, and men of wide experience in works of excavation, so that a complete knowledge of the soil might be acquired, and such recommendations might be made as would expedite the beginning of the actual construction. Several experts were consulted, and among others who responded to the inquiries was Charles Fitzsimons, a man of vast experience in digging canals, tunnels, and the like. Mr. Fitzsimons gave it as his opinion that the soil under consideration was composed of a peculiar material, which was very hard to drill, and required blasting in order to be excavated. He also testified that he did not bid on this work for the reason that he was afraid of finding this material, in which event he did not know whether he would make or lose money on the contract. In connection with the amount of important information purported to have been within easy reach of the engineer is the testimony insisted upon by the defendant to the effect that the government had also furnished data showing the existence of a peculiar substance which would be difficult of excavation, because of its intractable character. In view of these facts, I must assume that the data furnished from these several sources was not beyond the reach of some of the persons connected with the management of the canal, and ought to have been within their knowledge, had the management of this enterprise been thor-

oughly efficient, or even reasonably careful. Knowledge of the conditions to be met, so far as was reasonably practicable, ought to have been the essence of the contract. Upon the character of that soil depended, in a large measure, the actual cost of the canal.

Now, suppose it is true that they had no definite information as to the existence of this peculiar, intractable substance. It does not follow, in my judgment, that they ought not to have ascertained, from the facts within so easy reach, something relative to the probable discovery and location of such material. The Cooley borings, as well as those carried on by the government, indicated, in some measure, the presence of a material different from that shown to exist on the chart of the defendant. I am led to believe that these prior investigations could have been obtained by the defendant, and, in every sense of the word, should rightly have been put in the possession of the complainants, so that they might be correctly guided in their proposals and estimates on the material to be handled. The suppression of all such prior information unquestionably worked a hardship, if not a fraud, upon the complainants. I am of the opinion that if the trustees, either by actual fraud or by carelessness, kept any facts relative to the material to be excavated from the complainants, they are guilty of negligent performance of their duty. The fact that after the 8th of August the complainants went on with their work, and removed 60,000 cubic yards of soil, 20,000 of which being this hard material, proves beyond a question of doubt that they were led to believe that some satisfactory and sufficient adjustment might still be made. The finding may be that the defendant is guilty, and the exceptions are overruled. I think I ought to add, in this connection, that, in my opinion, the difficulties arising in the case are the result of carelessness, rather than intended fraud.